AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

DISTRICT OF __DELAWARE__

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Two CPUs described more particularly on Attachment A

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 06- 154 M

REDACTED

I __Taneka S. Harris__ being duly sworn depose and say:

I am a(n) __Federal Bureau of Investigation Special Agent__ and have reason to believe
   Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

two CPUs described more particularly on Attachment A

in the _____ District of __Delaware__

there is now concealed a certain person or property, namely (describe the person or property to be seized)

described more particularly on Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of a crime and contraband

concerning a violation of Title __18__ United States code, Section(s) __2252 and 2252A__.
The facts to support a finding of Probable Cause are as follows:

AFFIDAVIT attached.

```
F I L E D

MAR 3 0 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

Continued on the attached sheet and made a part hereof.    ☒ Yes    ☐ No

_Taneka S. Harris_
Signature of Affiant
Taneka S. Harris, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

_December 21, 2006_                            at    Wilmington, Delaware
Date                                                 City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name and Title of Judicial Officer                   Signature of Judicial Officer

## ATTACHMENT A

### COMPUTER PROCESSING UNITS TO BE SEARCHED

The two CPUs, presently located at the Delaware State Police High Tech Crime Unit in Dover, Delaware, are described as follows:

a. Dell Dimension 2400, Serial Number - 7JK7M31.

b. Delaware Micro Computer - XBLADE case, Serial Number - 042818396.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1. Images of child pornography, as defined in 18 U.S.C. § 2256(8), and child erotica, including:

    a. preview1_52[1].jpg (prepubescent boy performing oral sex on a prepubescent male).

    b. preview1_53[53].jpg (prepubescent female performing oral sex on an adult male).

    c. logo_42[1].jpg (adult male having intercourse with a prepubescent female).

    d. h72[1].jpg (prepubescent females performing oral sex on a prepubescent male).

    e. preview1_54[1].jpg (adult male holding a prepubescent female down while he ejaculates in her mouth).

2. Records regarding the receipt and/or distribution of child pornography, including the five computer files listed above.

3. Indicia of subscription to Internet Service Providers, including Comcast residential high speed Internet service.

4. Records regarding the use of email screen names: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5. Indicia of a Paypal/Ebay account for Anthony Fridas, email - ▓▓▓▓▓▓▓, phone ▓▓▓▓▓ and ▓▓▓▓▓, address - ▓▓▓▓▓

## AFFIDAVIT

I, Taneka S. Harris, a Special Agent with the Federal Bureau of Investigation (FBI), Baltimore Division, Wilmington, Delaware Resident Agency, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent of the FBI since October 31, 2004, and am currently assigned to the Baltimore Division, Wilmington, Delaware Resident Agency. Since joining the FBI, I have been involved in the investigation of bank fraud, terrorism activity, and child pornography. Since December 2005, I have been assigned to investigate Crimes Against Children that include the Sexual Exploitation of Children (SEOC) violations of federal law. I have gained expertise in how to conduct such investigations through training classes, conferences, and everyday work related to conducting these types of investigations. I have attended the Innocent Images National Initiative Undercover Internet Training (introductory and advanced courses), and Crimes Against Children Conference.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I am investigating the activities of a computer having internet connection with a service and billing address of ███████████, Frederica, Delaware 19946. As will be shown below, there is probable cause to believe that someone using a computer at the above listed address has received, possessed, and/or transmitted child pornography, in violation of Title 18, United States Code, Sections 2252 and 2252A. I am submitting this Affidavit in support of a search warrant authorizing a search of two computer processing units ("CPUs") received from ███████████ Frederica, Delaware 19946. I am requesting authority to

1

search the entire operating systems for the CPUs as instrumentalities, fruits, and evidence of crime.

4.   All information contained in this affidavit is either personally known to the affiant or has been related to the affiant by other Special Agents of the Federal Bureau of Investigation. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, U.S.C. §§ 2252 and 2252A, are presently located on the two CPUs.

## STATUTORY AUTHORITY

5.   This investigation concerns alleged violations of Title 18, United States Code, Sections 2252, relating to material involving the sexual exploitation of minors. 18 U.S.C. § 2252(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce. 18 U.S.C. § 2252A(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

## DEFINITIONS

6.  The following definitions apply to this Affidavit and Attachment A to this Affidavit:

   a.  "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

   b.  "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

   c.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

   d.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

   e.  "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

3

f.      "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g.      "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h.      "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

i.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that

4

creates "test" keys or "hot" keys, which preform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

   j. "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

   k. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

### BACKGROUND ON COMPUTER AND CHILD PORNOGRAPHY

7. Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

8. The development of computers has changed this. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

9. Child pornographers can transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With digital cameras the images can be transferred directly onto a computer. A computer can connect to another computer through the use of telephone, cable, or wireless connections. Electronic contact can be made to literally millions of computers around the world.

10. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

11. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

12. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

13. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

7

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

14. Affiant has been informed that FBI Supervisory Special Agent (SSA) James T. Clemente has worked in the Behavioral Analysis Unit of the FBI since 1998. SSA Clemente has been a special agent with the FBI since 1987. As a member of the Behavioral Analysis Unit, SSA Clemente consults on child exploitation cases throughout the United States, South America, and certain European and African countries. Since 1998, he has received three Exceptional Performance Awards from the Department of Justice and a Superior Service Award from the FBI. In addition, he has received numerous letters of commendation from state, federal, and local law enforcement in connection with his work in the Behavioral Analysis Unit.

15. SSA Clemente's training has involved a significant number of specialized courses in the area of child exploitation, including, but not limited to the following: Innocent Images On-Line Sex Crimes Against Children; National Crimes Against Children; On-Line Sex Crimes Against Children; Clinical Forensic Psychology; Behavioral Analysis of Violent Crime; Missing and Exploited Children Seminar; Research Methodologies; MO, Ritual & Signature Advanced Seminar; and Criminology. In addition, he has mentored under, worked with, studied the articles of, and taught with Kenneth V. Lanning, a Supervisory Special Agent, FBI (retired as of October, 2000). SSA Lanning has over the past 27 years authored numerous articles on the topic of sexual victimization of children and behavioral analysis of child molesters. His work forms the basis of the behavioral analysis performed by the FBI in child exploitation cases.

16. SSA Clemente has assisted in the writing of numerous search warrant affidavits and has testified as an expert witness in federal court in the areas of child sex offender behavior, child sexual victimology and child pornography. He has given over 100 presentations and

lectures to local, state and federal law enforcement agencies, prosecutors, and health care professionals throughout the United States on various topics related to child exploitation, including, but not limited to the following topics: Behavioral Analysis of Child Sex Crimes Offenders, On-Line Sex Crimes Against Children, and Equivocal Death Investigations.

17. As a member of the Behavioral Analysis Unit, SSA Clemente has analyzed and consulted on between one and two hundred child sexual exploitation and victimization cases a year. His analyses are based on all available evidence, including chat records, image collection analysis, collection themes, possession of erotica, possession of sexual paraphernalia, fantasy literature and writings, other relevant acts, and background information. The vast majority of the cases he has analyzed have involved either Preferential or Situational Sex Offenders. His role in these cases has varied as follows: analyzing investigative results for the purpose of making investigative suggestions, providing expert affidavits for search warrant applications, providing interview strategies for subjects and victims, consulting with local, state and federal prosecutors on trial strategies. In addition, SSA Clemente has interviewed between 80 and 100 offenders himself. A behavioral assessment is not a clinical diagnosis; rather, it is a law enforcement tool used to identify and predict offender behavior.

18. SSA Clemente advises of the following traits and characteristics that are generally found to exist and be true in cases involving individuals who collect child pornography:

    a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.   The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c.   The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.   The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e.   The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral,

exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

    f.    The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.

### BACKGROUND OF THE INVESTIGATION

19.    As background, this investigation BEGAN in 2002 with the initiation of a case in the Kansas City Division (KCD) regarding the websites Cp-freedom and Cp-members.

20.    Cp-freedom/Cp-members operated as a pay-for-access site to explicit child pornography. This website was dismantled in 2002, and the membership database was seized by KCD. The database, which was seized from Valueweb contained hundreds of names and email accounts.

21.    At the time of the original Cp-freedom investigation, KCD was unaware of the existence of any related Paypal accounts with Cp-freedom.

22.    In approximately 03/2005, Kathy Free, Paypal/Ebay Security Supervisor, contacted SA Gentry, KCD, advising of the existence of several Paypal accounts related to Cp-freedom. The accounts in question were frozen by Paypal and identified as being associated with the child pornography operation known as Cp-freedom.

23.    Prior investigation of this website determined the users attempted to obtain access to the Cp-freedom website via credit card. This part of the investigation has determined the

11

individuals identified by subpoena through Paypal, attempted to gain access to the Cp-freedom website via a setup/funding of an account through Paypal.

24. In approximately 06/2005, KCD obtained the results from administrative subpoenas regarding the Paypal accounts setup and association with Cp-freedom.

25. One of the results of the Paypal subpoenas revealed the following: Email - ███████████████; Name - Anthony Fridas; Phones - ████████ and ████████, Address - ████████████████, City - Frederica; State - Delaware; Zip - 19946.

26. Each Paypal account user setup an account with Paypal and funded their respective account in an effort to obtain access to the Cp-freedom/Cp-member child pornography website.

27. On the morning of 12/20/2006, SA Harris conducted a "knock and talk" at the home of Anthony Fridas, ████████████████ Frederica, DE. Anthony Fridas was not home but his wife was present. Upon being advised of the identities of the agents and Delaware State Police Detective, and the purpose of our visit, that is, to ask for consent to examine the computers in the residence for the presence of child pornography, ████████, wife of Anthony Fridas, gave written consent to allow the removal and forensic examination of two CPUs from her home located at ████████████████ Frederica, Delaware 19946. ████████ took your affiant and Det. Whalen to a second floor office where there was located two computers, the Dell 2400 and the Delaware Micro, both described more particularly on attachment A. The Dell 2400 had an ethernet cable attached but was not connected to the internet. The Delaware Micro was attached to the internet by a cable modem. While your affiant was at the residence ████████ ████████ telephoned her husband, Anthony, at work and put your affiant on the phone with him.

12

Your affiant told Anthony Fridas that his wife had consented to the removal of the computers from the residence for a search for child pornography by the investigators. Anthony Fridas responded that your affiant could take the computers from the residence, saying there was nothing on them, that is, no child porn. That same morning, both CPUs were transported by your affiant from the residence to the DSP High Tech Crimes Unit lab in Dover, DE, where both CPUs were imaged that same day by Det. Whalen.

    28.    Later, on 12/20/2006, Detective Steve Whalen, Delaware State Police High Techs Crimes Unit, imaged both computers and previewed one of the CPUs, the Delaware Micro. During said preview, Det. Whalen and SA Harris observed five graphic files that are categorized as child pornography. The files, which your affiant has reviewed, are described as follows:

    a.    preview1_52[1].jpg (prepubescent boy performing oral sex on a prepubescent male).

    b.    preview1_53[53].jpg (prepubescent female performing oral sex on an adult male).

    c.    logo_42[1].jpg (adult male having intercourse with a prepubescent female).

    d.    h72[1].jpg (prepubescent females performing oral sex on a prepubescent male).

    e.    preview1_54[1].jpg (adult male holding a prepubescent female down while he ejaculates in her mouth).

The second computer, the Dell 2400, was not previewed.

13

29. On the morning of 12-21-06 your affiant spoke with Anthony Fridas at an FBI office in Dover for approximately one hour, at which time he denied any knowledge that child pornography was on either computer. Later that morning Anthony Fridas returned to the Dover office and requested the return of his computers. Your affiant has not returned either computer, but has secured them at the DSP High Tech Crimes Unit pending the application for this search warrant. Also on this day Det. Whalen reported that he conducted this day a partial review of his image of the Dell 2400 and had not detected any child pornography on that computer. Det. Whalen further reported that on his image of the Delaware Micro he detected additional images of child porn.

30. The results from an administrative subpoena sent by the KCD to Comcast Cable Communication, Inc. for subscriber and billing information concerning email account ███████.net revealed that the following: Account Name - ███████, Phone - ███████; Address - ███████, City - Frederica; State - Delaware; Zip - 19946. The account has the following additional E-mail user ids: ███████ and ███████ (both @comcast.net).

31. The FBI has searched various record databases for information about Anthony Fridas. Delaware State Department of Motor Vehicles' records for Anthony Fridas indicated an address of ███████, Frederica, Delaware 19946.

### DESCRIPTION OF THE CPUs TO BE SEARCHED

32. The CPUs are described as follows:

    a. Dell Dimension 2400, Serial Number - 7JK7M31.

    b. Delaware Micro Computer - XBLADE case, Serial Number - 042818396.

Presently, the two CPUs are located at the Delaware State Police High Tech Crime Unit in Dover, Delaware.

## CONCLUSION

33. Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that CPUs seized from ▓▓▓▓▓▓▓▓▓▓▓▓▓, Frederica, Delaware 19946, contain fruits and evidence of crime. Additionally, there is probable cause to believe that evidence of the commission of criminal offenses, namely, violations of 18 U.S.C. §§ 2252 and 2225A, is contained on the CPUs, and this evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

34. Your Affiant, therefore, respectfully requests that a warrant be issued authorizing the search of the items listed in Attachment A.B.

_____
SA Taneka S. Harris, FBI

Sworn and subscribed before me
this ___ day of December

_____
Honorable Mary Pat Thynge
United States Magistrate Judge

15